IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Sammie Lee Gerrick,                    )
                                       )
                 Petitioner,           )
                                       )        Civil Action No. 0:22-3641-BHH
v.                                     )
                                       )        **ORDER**
Warden, Lieber Correctional Institution, )
                                       )
                 Respondent.           )
_____ )

This matter is before the Court on Petitioner Sammie Lee Gerrick's ("Gerrick" or "Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On April 26, 2023, Respondent filed a motion for summary judgment, to which Petitioner filed a response. (ECF Nos. 28, 41.) Respondent filed a reply, and Petitioner filed a sur-reply without prior authorization.[1] (ECF Nos. 42, 43.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., the matter was referred to a United States Magistrate Judge for initial review.

On October 13, 2023, Magistrate Judge Paige J. Gossett filed a Report and Recommendation ("Report") outlining the issues and recommending that the Court grant Respondent's motion for summary judgment. (ECF No. 45.) Attached to the Report was a notice advising the parties of the right to file written objections to the Report within fourteen days of being served with a copy. On November 6, 2023, Petitioner filed objections to the Report. (ECF No. 52.) For the following reasons, the Court overrules Petitioner's objections, adopts the Magistrate Judge's Report, and grants Respondent's

---

[1] In her Report, the Magistrate Judge indicated that she did not consider Petitioner's sur-reply in making her recommendations but that, regardless, consideration of the sur-reply would not have changed the outcome. (ECF No. 45 at 1 n.1.)

motion for summary judgment.

## BACKGROUND

Petitioner was indicted and tried for the murder of Tyrone Donaldson ("the victim") in Barnwell County, South Carolina.  *See* C/A No. 2013-GS-06-465.  At trial, the State's theory of the case was that Petitioner owed the victim money after the victim helped bail Petitioner out of jail, and Petitioner was the last person seen with the victim on the day the victim disappeared.  The State presented evidence that Petitioner met the victim in a wooded area, killed him, and buried the body, and that Petitioner attempted to cover up the crime by, among other things, driving the victim's car away from the crime scene and lying to investigators about the circumstances of the victim's disappearance.  A jury convicted Petitioner as charged, and the trial court sentenced him to life imprisonment without the possibility of parole.  Petitioner filed a direct appeal, but the South Carolina Court of Appeals affirmed the conviction and sentence in an unpublished opinion.

Gerrick filed an application for post-conviction relief ("PCR") in March of 2016.  The PCR court held an evidentiary hearing in May of 2018 and issued an order of dismissal in August of 2018.  Gerrick appealed the denial of his PCR application by filing a petition for writ of certiorari in the South Carolina Supreme Court.  The petition was transferred to the South Carolina Court of Appeals pursuant to South Carolina Appellate Court Rule 234(I), and the Court of Appeals ultimately denied the petition.  Gerrick filed the instant § 2254 petition on October 20, 2022.

While this petition was pending, Gerrick filed a second PCR application in the Barnwell County Court of Common Pleas.  *See* C/A No. 2020-CP-06-00116.  The PCR Court issued a conditional order of dismissal on December 10, 2022, but the second PCR

2

application remains pending.[2]

In his instant § 2254 petition, Gerrick asserts the following grounds for relief, taken verbatim from his handwritten petition:

**Ground one:** Trial counsel rendered ineffective assistance of counsel for failing to move for Judge Early to recuse himself when the prosecution planned to present evidence that Judge Early was mentioned in a "root." Under the circumstances, Judge Early presiding over the case conveyed to the jurors the trial court's opinion about the "root" evidence and constituted a conflict of interest. . . .

**Ground two:** Trial counsel rendered ineffective assistance of counsel by failing to investigate and present available evidence explaining the "root." As a result, Petitioner was denied his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. But for counsel's ineffectiveness, the result of the proceeding would have been different.

. . .

**Ground three:** Trial counsel rendered ineffective assistance of counsel for failing to object to the trial judge's opening comments and final instructions on the law, instructing the jurors to find the "true facts," including but not limited to the opening instruction, "[A]t the conclusion when you 12 acting collectively as one determine what those true facts are, then you apply those facts to the law as I give it to you and you will be in a position to render a verdict"; and the final instructions to the jurors, "It is your sole responsibility to determine what the true facts are in the case and apply those true facts to the law as I give it to you and render a verdict." "That is your sole responsibility, your sole duty to determine what the true facts are in this case:" and "you're here to give careful consideration and deliberation of the evidence presented to you, to decide what the true facts are, and apply those facts to the law as I've given it to you." As a result, Petitioner was denied his right to effective assistance of counsel in violation of the Sixth Amendment and his Fifth and Fourteenth Amendments due process rights to the United States Constitution to a fair trial. But for counsel's ineffectiveness, the result of the proceeding would have been different.

. . .

---

[2] *See* https://publicindex.sccourts.org/Barnwell/PublicIndex/PISearch.aspx (last visited March 11, 2024).

**Ground four:** Trial counsel rendered ineffective assistance of counsel for failing to object to the trial judge excluding Petitioner from hearings to determine whether to retain or excuse juror numbers 9 and 23 in violation of Petitioner's constitutional right to be present during all critical stages of his jury trial in violation of his Sixth Amendment right to be present at every stage of his trial and the right [to] the effective assistance of counsel. But for counsel's ineffectiveness, the result of the proceeding would have been different.

. . .

**Ground five:** Trial counsel rendered ineffective assistance of counsel for failing to object or make an offer to stipulate to graphic photographs of the victim's body when those photographs were so prejudicial, inflammatory, and introduced to arouse sympathy, passion, and prejudice in the juror's minds as to deny Petitioner Due Process in violation of his Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process. But for counsel's ineffectiveness, the result of the proceeding would have been different.

. . .

**Ground six:** Trial counsel rendered ineffective assistance of counsel for failing to move to exclude the testimony of Petitioner's wife that was obtained in violation of the spousal privilege and as a result of improper witness intimidation in violation of the Sixth Amendment right to the effective assistance of counsel and Fourteenth Amendment Due Process right to a fair trial.

. . .

**Ground seven:** Trial counsel rendered ineffective assistance of counsel for failing to object to improper victim impact evidence that was not relevant and which were intended to arouse sympathy, passion, and prejudice in the juror's minds, in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel. But for counsel's ineffectiveness, the result of the proceeding would have been different.

. . .

**Ground eight:** Trial counsel rendered ineffective assistance of counsel for failing to object to impermissible character testimony that violated Rule 404, SCRE, in violation of Petitioner's Sixth Amendment right to the effective assistance of counsel. But for counsel's ineffectiveness, the result of the

proceeding would have been different.

. . .

**Ground nine:** Trial counsel rendered ineffective assistance of counsel for failing to object to the prosecutor's statements in closing argument that were not supported by the evidence in the case and misstated testimony presented at trial when those statements amounted to a violation of due process.

. . .

**Ground ten:** Trial counsel rendered ineffective assistance of counsel for failing to request the trial judge allow defense counsel an opportunity to respond to the prosecutor's statements in closing argument that were not supported by the evidence in the case and misstated testimony presented at trial when those statements amounted to a violation of due process.

. . .

**Ground eleven:** Ineffective assistance of counsel. Trial counsel failed to object to statements by the prosecutor during closing argument which were intended to arouse sympathy, passion, and prejudice in the juror's minds and urged the jurors to seek justice for the victim rather than to determine whether the State met its burden of proof.

. . .

**Ground twelve:** Ineffective assistance of counsel. Trial counsel failed to object to inflammatory statements by the prosecutor which were introduced to arouse sympathy, passion, and prejudice in the jurors' minds and were so defamatory to Petitioner that it denied him his Fifth and Fourteenth Amendment due process.

. . .

**Ground thirteen:** Ineffective assistance of counsel. Trial counsel rendered ineffective assistance for failing to quash the indictment when it was discovered that one of the grand jurors that indicted Petitioner was also a witness in the case, which denied Petitioner's right to a fair and impartial grand jury presentment.

. . .

5

**Ground fourteen:** Ineffective assistance of counsel: Trial counsel rendered ineffective assistance of counsel for failing to investigate, develop, and present evidence that someone other than Petitioner killed Tyrone Donaldson [victim].

. . .

**Ground fifteen:** Petitioner waives this ground.

**Ground sixteen:** The cumulative effect of trial counsel's errors requires a new trial. The Petitioner respectfully requests this Court apply a cumulative prejudice analysis to this case, considering the entire post-conviction record . . . as a whole and cumulative of mitigation evidence presented originally in conducting the prejudice analysis and finding counsel ineffective for failing to adequately prepare and present mitigation. Petitioner has shown that but for counsel's unprofessional errors, the result of this proceeding would have been different.

**Ground seventeen:** Actual innocence
This Court is the first time this claim has been raised.

(ECF No. 1 at 23-46.)

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)

6

(stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

## II.    Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## <u>DISCUSSION</u>

## I.    Habeas Corpus Relief

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

7

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Exhaustion and Procedural Bar

Before a Petitioner can obtain relief under § 2254, he must first clear a series of procedural hurdles. For example, a state prisoner must exhaust his state court remedies by "present[ing] his claim to the state's highest court" before a federal court can grant relief on the merits of a claim.[3] *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021); *Coleman v.*

---

[3] The exhaustion requirement exists to promote comity within our federal system. As the Supreme Court has explained:

Because "it would be unseemly in our dual system of government for a federal district court to upstate a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one

*Thompson*, 501 U.S. 722, 729-30 (1991).  Thus, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition."  *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

In other words, to exhaust a federal habeas corpus claim, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim."  *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (citation and internal quotation marks omitted).  This means that a petition must present the claim to the state court "face-up and squarely."  *Id.*  Otherwise, the state will be deprived of its "opportunity to correct the constitutional violation in the first instance." *Id.* (internal quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default–often referred to as a procedural bar–one example of which occurs 'when a habeas petitioner fails to exhaust available state remedies and the court to which [he] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Mahdi*, 20 F.4th at 892 (quoting *Breard*, 134 F.3d at 619) (internal quotation marks omitted).  Another way procedural default occurs is when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal."  *Breard*, 134 F.3d at 619.

Nevertheless, because the requirement of exhaustion is not jurisdictional, in very

---

court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant on the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 399 U.S. 200, 204 (1950)).

9

limited circumstances a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court may review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent. *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual

10

innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## III.    Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. Additionally, as the Supreme Court explained in *Harrington v. Richter*:

> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland*
> and § 2254(d) are both "highly deferential,"[ ], and when the two apply in

11

tandem, review is "doubly" so [ ]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [ ] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. 86, 105 (2011) (internal citations omitted). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Ultimately, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

## IV.    Petitioner's Claims and the Court's Review

In her Report, the Magistrate Judge first noted that the PCR court ruled upon grounds one through fourteen in Gerrick's first PCR proceeding, and that Gerrick waived ground fifteen in his petition. Next, the Magistrate Judge explained that, in response to the government's motion, Gerrick withdrew grounds five, fourteen, sixteen, and seventeen of his petition. The Magistrate Judge then carefully considered the merits of grounds one through four and six through thirteen, all of which raise claims of ineffective assistance of counsel, and the Magistrate Judge ultimately found no merit to any of them, as explained in greater detail below.

First, as to Gerrick's claim that trial counsel was ineffective for failing to seek recusal of the trial judge, whose name was written on a piece of evidence that was shown to the jury, the Magistrate Judge found no error in the PCR court's analysis. In other words, the Magistrate Judge found that Gerrick failed to show that the PCR court's finding that trial counsel was not ineffective for failing to seek Judge Early's recusal was contrary to, or an

unreasonable application of, clearly established federal law.

As to ground two, in which Gerrick asserts that trial counsel was ineffective for failing to conduct an independent investigation of the note found in his vehicle that was presented as evidence of guilt, the Magistrate Judge again found no error in the PCR court's analysis. As the Magistrate Judge explained, trial counsel testified at the PCR hearing that he attempted to have the note excluded but that the trial court ruled against him. As the Magistrate Judge also explained, the PCR court found trial counsel's testimony credible and did not find the testimony of Gerrick and his wife credible, and the PCR court remarked that trial counsel's decision to minimize the impact of the note was strategically advantageous because if counsel had presented evidence that Gerrick's wife wrote the note, then Gerrick's wife may have had to waiver her spousal privilege and testify. Ultimately, the Magistrate Judge found that Gerrick failed to show that the PCR court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.

Next, as to ground three, in which Gerrick argues that trial counsel was ineffective for failing to object to the trial court's instructions that jurors "determine the true facts," the Magistrate Judge explained that the PCR court found the language acceptable under state law at the time and thus that counsel had no basis to object. The Magistrate Judge also explained that the PCR court found that Gerrick suffered no prejudice as a result of the instructions. Ultimately, the Magistrate Judge found no error in the PCR court's analysis.

Likewise, as to ground four, in which Gerrick asserts that trial counsel was ineffective for failing to object to Gerrick's not being physically present for in-chambers discussion about whether to excuse two jurors, the Magistrate Judge reviewed the PCR court's

findings, explaining that the PCR court found no ineffective assistance on the part of trial counsel because Gerrick had no right to be present for the in-chambers discussion, and because Gerrick was present for the on-the-record discussion that followed the in-chambers meeting and thus had the opportunity to object to the decision to replace juror #9 with juror #23. The Magistrate Judge ultimately found that Gerrick failed to show that the PCR court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.

As a sixth ground for relief, Gerrick asserts that trial counsel was ineffective for failing to move to exclude the testimony of his wife that she had helped Gerrick move the victim's car from the scene of the crime. In her Report, the Magistrate Judge noted that trial counsel made a pretrial motion to exclude Gerrick's wife's testimony reagarding any communications between the spouses, but the trial court ruled that the spousal privilege had to be invoked by the witness and not the defense, and that Gerrick's wife could invoke the privilege at the proper time. As the Magistrate Judge explained, the PCR court found that trial counsel was not ineffective for failing to move to exclude his wife's testimony because counsel did, in fact, move to limit Gerrick's wife's testimony, and regardless, her testimony did not include any reference to communications she had with Gerrick. The PCR court also found that Gerrick failed to show prejudice because trial counsel had no legal basis to invoke the spousal privilege on Gerrick's wife's behalf. Ultimately, the Magistrate Judge found no legal or factual errors in the PCR court's analysis of this claim.

In ground seven, in which Gerrick asserts that trial counsel was ineffective for failing to object to improper victim impact evidence, the Magistrate Judge found no error in the

14

PCR court's analysis. As the Magistrate Judge explained, the PCR court found that trial counsel had no basis to object to the testimony because the evidence was admissible as circumstantial proof of Gerrick's guilt, and Gerrick failed to show that trial counsel was deficient or that Gerrick was prejudiced by the evidence.

As to ground eight, in which Gerrick asserts that trial counsel was ineffective for failing to object to prior bad act evidence (that Gerrick was previously in jail on criminal charges), the PCR court found that trial counsel was not ineffective because the evidence was admissible under the *res gestae* theory. The PCR court also found that Gerrick failed to show he was prejudiced by the evidence because the jury was already aware that Gerrick spent time in jail, as that fact was integral to the reason why Gerrick and the victim were last seen together on the day the victim went missing. Ultimately, the Magistrate Judge found no error in the PCR court's analysis and concluded that Gerrick failed to show that the PCR court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.

As to ground nine, in which Gerrick asserts that trial counsel was ineffective for failing to object to portions of the State's closing argument that were not supported by the facts, the Magistrate Judge also found no error in the PCR court's analysis. As the Magistrate Judge explained, the PCR court found that the State's closing argument matched the evidence presented at trial and was not objectionable. Therefore, the PCR court found that trial counsel was not ineffective for failing to object, as trial counsel effectively had no basis to object.

Next, with respect to ground ten, where Gerrick asserts that trial counsel was

15

ineffective for failing to ask the trial court for the opportunity to respond to the State's closing argument, the Magistrate Judge explained that the PCR court found no ineffectiveness on the part of counsel because state law dictated that the State was entitled to make the final closing argument in front of the jury. The Magistrate Judge ultimately found no error in the PCR court's analysis.

As to grounds eleven and twelve, in which Gerrick asserts that trial counsel was ineffective for failing to object to portions of the State's closing argument that were intended to arouse sympathy, passion, and prejudice in the jurors' minds, the Magistrate Judge explained that during closing arguments the prosecutor accused Gerrick of lying and concealing the truth. At the PCR hearing, trial counsel testified that he did not find these statements objectionable because the record at trial showed the Gerrick had made multiple inconsistent statements to law enforcement, and trial counsel elected not to object because it would have drawn more attention to that fact in front of the jury, and the jury could have believed that trial counsel was attempting to hide something. The PCR court ultimately found that trial counsel was not deficient for failing to object and that Gerrick failed to demonstrate prejudice, and the Magistrate Judge found that Gerrick failed to show that the PCR court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.

Lastly, as to ground thirteen, in which Gerrick asserts that trial counsel was ineffective for failing to move to quash the indictment because one of the grand jurors was listed as a witness for the state, the Magistrate Judge found no error in the PCR court's analysis. As the Magistrate Judge noted, prior to trial, the State sought a new indictment from another grand jury to cure the defect. Thus, the PCR court found that trial counsel

was not ineffective for failing to move to quash the new indictment, as the new indictment effectively cured any defect in the first indictment.  As with his other claims, the Magistrate Judge found that Gerrick failed to show that the PCR court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts.

In all, therefore, the Magistrate Judge recommended that the Court grant Respondent's motion for summary judgment and deny Petitioner's § 2254 petition as to all of his claims.

In his objections, Petitioner specifically objects to only two portions of the Magistrate Judge's Report: (1) her analysis of ground four; and (2) her analysis of grounds eleven and twelve.  As previously mentioned, in the absence of a specific objection, the Court reviews the Magistrate Judge's analysis for clear error.  Here, the Court has reviewed the Magistrate Judge's analysis of grounds one through three, six through ten, and thirteen for clear error,, and the Court finds none.[4]  Thus, the Court adopts the Magistrate Judge's findings as to these grounds without any further discussion, and the Court incorporates the Magistrate Judge's analysis herein.

Next, as to the Magistrate Judge's analysis of ground four, to which Petitioner *does* object, Petitioner asserts that "[t]rial counsel's failure to object to Petitioner's not being physically present for an in-chambers discussion to excuse juror #19 and retain juror #23 was contrary to, or involved an unreasonable application of the clearly established federal

---

[4] Furthermore, the Court notes that even after *de novo* review, the Court fully agrees with the Magistrate Judge's analysis, including her conclusion that Gerrick has failed to show that the PCR court's findings as to grounds one through three, six through ten, and thirteen are contrary to, or involve an unreasonable application of, clearly established federal law, or involve an unreasonable interpretation of the facts.

law in *Strickland v. Washington*." (ECF No. 52 at 2.) Petitioner further asserts that he had a constitutional right to be present at this critical stage and that his "exclusion during the in-chambers discussion about whether to excuse the two jurors prejudice Petitioner, in that, he was denied his right to remove juror #23 for cause and/or right to exercising his peremptory challenges, to give advice or suggestions to counsel concerning potential jurors." (*Id.* at 3.) According to Gerrick, the PCR court's finding that Gerrick's right to be present was not violated because of the record made by the trial court regarding the in-chambers discussion, is contrary to or an unreasonable application of clearly established federal law.

After *de novo* review, the Court finds no error in the PCR court's analysis of this ground. As the Magistrate Judge explained, during trial, following an in-chambers discussion between the trial judge and the attorneys, the substance of the in-chambers discussion was put on the record. At that time, juror #23, an alternate juror, was elevated to replace juror #9, who it had been discovered had mental health issues. This was despite the fact that juror #23 had disclosed during voir dire that she was Facebook friends with one of the State's witnesses but did not actually know the witness offline.

At the PCR hearing, trial counsel testified that he preferred that juror #23 sit on the jury because she had been honest about her connection to one of the witnesses, and trial counsel believed that juror #23 could be impartial and had more serious concerns about juror #9. The PCR court found that trial counsel was not ineffective because Gerrick had no right to be present in chambers and that Gerrick was not prejudiced regardless because he was present for the on-the-record discussion and had the opportunity to object to the decision to replace juror #9 with juror #23.

18

Ultimately, the Court agrees with the Magistrate Judge that Gerrick has not shown that the PCR court's analysis is contrary to, or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts. (*See* ECF No. 45 at 14 (citing *United States v. Boone*, 759 F.2d 345, 347 (4th Cir. 1985) ("[A]n in-chambers conference concerning the dismissal of a juror, . . . is not a stage of the trial when the absence of the defendant would frustrate the fairness of the trial so long as counsel for the defendant is present.") (citation omitted).) Furthermore, even if Gerrick is correct that counsel should have objected to the in-chambers discussion occurring outside of his presence, Gerrick still cannot demonstrate any prejudice as a result, as the substance of the in-chambers discussion was put on the record in Gerrick's presence, and he had a full opportunity to object to the replacement of juror #9 with juror #23. The Court finds that Petitioner is not entitled to habeas corpus relief based on ground four.

Next in his objections, Petitioner asserts that the Magistrate Judge erred in her analysis of grounds eleven and twelve, in which Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the prosecutor calling Petitioner a liar during closing arguments. According to Gerrick, the prosecutor used the word "liar" or some form of the word "lie" "in a context intended to either convey his personal opinion or to suggest the state's possession of extra-judicial information regarding the credibility of Petitioner." (*Id.* at 9.) Petitioner ultimately asserts that the PCR court's decision is contrary to, or involved an unreasonable application of federal law.

After *de novo* review, the Court finds no error in the Magistrate Judge's analysis, and the Court agrees with her that Gerrick has not shown that the PCR court's decision was

19

contrary to, or involved an unreasonable application of, clearly established federal law, or that it involved an unreasonable determination of the facts. As the Magistrate Judge explained, the PCR court found that counsel was not ineffective for failing to object to the prosecutor's statements that Gerrick lied and concealed, because the record at trial showed that Gerrick had made multiple inconsistent statements to law enforcement. The PCR court also found that trial counsel articulated a valid strategic reason not to object (to avoid drawing more attention to the fact or potentially leading the jury to believe that trial counsel was trying to hide something), and that Gerrick failed to show that he was prejudiced by counsel's failure to object.

After careful consideration, the Court agrees with the Magistrate Judge that Gerrick fails to show how trial counsel could have successfully objected to the State's closing argument. (*See* ECF No. 45 at 22 (citing *State v. Navy*, 414, 635 S.E.2d 549, 557 (S.C. Ct. App. 2006), *aff'd in part, rev'd in part on other grounds*, 688 S.E.2d 838 (S.C. 2010) (finding that accusing the defendant of lying was not a basis for the court to find a closing argument objectionable). Furthermore, Gerrick offers no explanation as to why this Court should not give deference to the PCR court's finding that trial counsel had a valid strategy behind the decision not to object to the closing argument. In all, therefore, the Court finds that Petitioner is not entitled to habeas corpus relief based on grounds eleven and twelve of his petition.

## CONCLUSION

**Based on the foregoing, the Court overrules Petitioner's objections (ECF No. 19); the Court adopts in full and specifically incorporates the Magistrate Judge's**

Report (ECF No. 17); and the Court grants Respondent's motion for summary judgment (ECF No. 13).

IT IS SO ORDERED.

/s/Bruce H. Hendricks
United States District Judge

March 11, 2024
Charleston, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001).  Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is denied.